Revised February 28, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Summary Calendar
No. 01-41393
_____


JUAN HERNANDEZ

                              Plaintiff - Appellee

     v.

CRAWFORD BUILDING MATERIAL COMPANY,
doing business as Crawford's Discount
Carpet and Home and Floor Center


                              Defendant - Appellant

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

February 21, 2003

Before KING, Chief Judge, and SMITH and DENNIS, Circuit Judges.

PER CURIAM:

     Defendant-Appellant Crawford Building Material Company

("Crawford") appeals the final judgment entered by the District

Court for the Eastern District of Texas ordering Crawford to pay

Plaintiff-Appellee Juan Hernandez $20,000 in compensatory damages

and $55,000 in punitive damages as a result of Hernandez's claim

that Crawford initiated a retaliatory employment action in

violation of Title VII. Crawford attacks both the sufficiency of the evidence presented to the jury and the ability of an employee to base a Title VII retaliation claim on the employer's filing of a counterclaim against that employee after the employee has been discharged. We conclude that the district court erred in denying Crawford's motion for judgment as a matter of law on the question of whether the filing of a counterclaim could support an action for employment retaliation. We therefore reverse the district court and remand with instructions to dismiss the retaliation claim.

## I.  FACTS AND PROCEDURAL BACKGROUND

Hernandez, a Mexican immigrant, began working as a manual laborer at Crawford's lumber yard around 1975. At some point, management at Crawford became dissatisfied with Hernandez's performance; he was transferred to Crawford's carpet warehouse, where he received a pay raise concomitant with increased duties. Crawford continued to be unhappy with Hernandez, though, and on June 17, 1999, Crawford fired Hernandez after he miscut a roll of carpet and failed to report the mistake. At that time, Hernandez was sixty-one years old.

Hernandez filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and with the Texas Commission on Human Rights. When neither commission would provide him with the relief requested, he sought and secured a "right-to-sue" letter from the EEOC. On October 13, 2000, Hernandez filed suit against

2

Crawford, alleging that his termination violated the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1981, and Title VII.

At some point while Hernandez was pursuing this suit, someone told one of Crawford's owners that Hernandez had been stealing company property while he was employed at Crawford. The witness, Manual Guerra, was a painter who had done business with Crawford. He reported seeing building materials belonging to Crawford stacked behind Hernandez's house; he also reported that Hernandez was selling that property. Hernandez allegedly told Guerra that Crawford paid him with building materials.

Crawford answered Hernandez's complaint on November 3, 2000. In that answer, Crawford both denied the allegations of discriminatory discharge and raised a counterclaim for theft against Hernandez. In his answer to Crawford's counterclaim, Hernandez denied having ever stolen building materials from Crawford. Then, on May 21, 2001, Hernandez supplemented his original complaint to allege that Crawford's counterclaim amounted to a retaliatory employment action in violation of Title VII, the ADEA, and § 1981.

Hernandez moved for summary judgment on the counterclaim. The district court granted that motion, finding that Crawford could not prove specifically, or even generally, what was stolen or that Hernandez stole it. Most of the allegations of theft concerned items that had gone missing six or seven years earlier;

3

at that time, Crawford had not investigated the problem. As a result, Crawford now simply lacked sufficient evidence to demonstrate to a jury that Hernandez had stolen Crawford's property.

At trial, the jury instruction covering Hernandez's retaliation claim included the following statements:

> The Plaintiff also brings causes of action for retaliation, in violation of Title VII, the ADEA, and § 1981. These laws prohibit an employer from retaliating against a former employee for filing a discrimination lawsuit. Here, Plaintiff Hernandez contends that Defendant Crawfords made allegations and the claim for theft to retaliate against Plaintiff for having brought this lawsuit and pursuing his claims of discrimination against this Defendant.

> To prevail on his retaliation claim, Plaintiff Hernandez must show by a preponderance of evidence his good faith opposition to discrimination and bringing this lawsuit was a substantial or motivating factor for a decision by Defendant Crawfords to make a theft allegation and counterclaim.

The jury found, in two special interrogatories, that Crawford had not discharged Hernandez because of his age or because of his Mexican heritage. However, the jury did find that Crawford's filing of the counterclaim constituted a retaliatory employment action. The jury awarded $20,000 in compensatory damages (for Hernandez's claimed mental anguish and shame as a result of being branded a thief) and $55,000 in punitive damages.

Crawford filed motions for a new trial and for judgment as a matter of law. In his motion for a new trial, he argued that there was insufficient evidence to support the jury's findings:

4

(1) that Crawford had no permissible basis for filing the theft counterclaim; (2) that Hernandez had suffered actual damages as a result of the counterclaim; and (3) that Crawford had acted in a manner sufficient to warrant an award of punitive damages. In his motion for judgment as a matter of law, Crawford argued that the filing of a counterclaim was not the kind of "ultimate employment decision" upon which a claim of retaliation may be based and, alternatively, that Hernandez had not proven that Crawford had a retaliatory motive in filing the counterclaim.

The district court denied both motions. The court found that Hernandez had presented sufficient evidence to support the jury's findings on the retaliation, causation, and damages questions. As for the question of whether the filing of a counterclaim could support a retaliation claim, the district court found that, by failing to object to the jury charge on the law of retaliation, Crawford had not preserved the issue for later challenge. As a result, the district court reviewed the question only for plain error; finding the issue debatable within the federal district courts in Texas, the district court concluded that no plain error had occurred.

Crawford timely appealed, raising two general classes of appealable issues. First, Crawford reargues that the filing of a counterclaim is not an "ultimate employment decision" sufficient to support a claim of employer retaliation. Second, Crawford asserts that there was insufficient evidence to support the

5

jury's findings that: (1) Crawford had a retaliatory motive in filing the counterclaim; (2) the filing of the counterclaim caused any injury to Hernandez; (3) Hernandez was entitled to damages based on his mental anguish; (4) in the absence of actual damages, punitive damages were proper; and (5) Crawford's conduct was sufficiently egregious to support an award of punitive damages.

## II. FILING A COUNTERCLAIM AS AN "ULTIMATE EMPLOYMENT DECISION" FOR PURPOSES OF TITLE VII RETALIATION CLAIMS

Crawford contends that the jury impermissibly based its verdict on a finding that the filing of a counterclaim constituted a retaliatory action. Crawford argues that an employer's filing of a counterclaim cannot constitute the "ultimate employment decision" necessary to support a finding of retaliatory employment action under Title VII and the ADEA in the Fifth Circuit.[1]

The district court denied this ground, in part because Crawford had failed to object to the jury charge on this issue. Because Crawford failed to preserve the issue, it is reviewed only for plain error. Hartsell v. Dr. Pepper Bottling Co., 207 F.3d 269, 272 (5th Cir. 2000). To overturn a verdict for plain error in the jury instructions, we must find that the

---

[1] This court has held that analysis of retaliation claims is the same for ADEA claims as it is for Title VII claims. Sherrod v. Amer. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998). Therefore, for purposes of this discussion, we will discuss only Hernandez's Title VII claim.

6

instructions made an obviously incorrect statement of law that was "probably responsible for an incorrect verdict, leading to substantial injustice." Tompkins v. Cyr, 202 F.3d 770, 784 (5th Cir. 2000).

Our precedents create a three-part test that a plaintiff must satisfy in order to prove a retaliation claim: "(1) the employee has engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 878 (5th Cir. 1999) (citing Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997)). "Our court has analyzed the 'adverse employment action' element in a stricter sense than some other circuits." Id. at 878. In the Fifth Circuit, only an "ultimate employment decision" by an employer can form the basis for liability for retaliation under Title VII. Mattern, 104 F.3d at 705.

We have said that typical examples of ultimate employment decisions that can support a claim of retaliation include "hiring, granting leave, discharging, promoting, and compensating." Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1997). This understanding is grounded in the statutory language of Title VII. While retaliation cases are specifically covered by Section 2000e-3(a), we have looked to Section 2000e-2(a)(1), which makes it unlawful "to fail or refuse to hire or to

7

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," to determine which employment decisions can support a retaliation cause of action. In Mattern, we concluded that the kinds of "ultimate employment decisions" that will support a finding of retaliatory conduct must be similar to the kinds of conduct described in Section 2000e-2(a)(1). Mattern, 104 F.3d at 709; id. at 707 ("Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.") (quoting Dollis, 77 F.3d at 781-82). A review of our prior Title VII jurisprudence confirms that we have consistently refused to recognize retaliation claims that are dissimilar to the prohibited activities of § 2000e-2(a)(1).[2]

---

[2] Activities meeting the standard of "ultimate employment decisions" include: Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d 642, 658 (5th Cir. 2002) (demotion); Fierros v. Tex. Dep't of Health, 274 F.3d 187, 194 (5th Cir. 2001) (denial of pay increase); Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 521 (5th Cir. 2000) (discontinuation of employee's stipend, denial of request for paid leave, denial of request to extend unpaid leave, and termination); Evans v. City of Houston, 246 F.3d 344, 353 (5th Cir. 2001) (demotion); Thomas v. Tex. Dep't of Criminal Justice, 220 F.3d 389, 394 (5th Cir. 2000) (failure to promote employee); Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 402 (5th Cir. 2000) (denial of pay raise); Vadie v. Miss. State Univ., 218 F.3d 365, 374 (5th Cir. 2000) (refusal to consider employee for another position after closing employee's department); Shackelford v. Deloitte & Touche, 190 F.3d 398, 407 (5th Cir. 1999) (termination); Sharp v. City of Houston, 164 F.3d 923, 933 n.21 (5th Cir. 1999) (constructive demotion).

8

District courts in other circuits have held that the filing of a suit or counterclaim can support a lawsuit premised on a theory of retaliatory employment action. See Beckham v. Grand Affair of N.C., Inc., 671 F. Supp. 415, 419 (W.D.N.C. 1987) (finding retaliation where employer instituted criminal prosecution of former employee who filed claim with EEOC); EEOC v. Va. Carolina Veneer Corp., 495 F. Supp. 775 (W.D. Va. 1980) (finding retaliation where employer filed defamation suit against employee based upon statements made by employee to EEOC). However, this circuit has taken a more skeptical view, remarking that "[i]t is not obvious that counterclaims or lawsuits filed against a Title VII plaintiff ought to be cognizable as retaliatory conduct under Title VII. After all, companies and

---

Activities which are not "ultimate employment decisions" include: Green, 284 F.3d at 657-58 (changing locks, restructuring office procedures, clarifying job duties, and reprimands); Mota, 261 F.2d at 521 (removal of employee's name from letterhead, ostracism by coworkers, and loss of some job duties); Thomas, 220 F.3d at 389 n.2 (assignment to less desirable shift and formal discipline); Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000) (removal from duties on particular account, timing of short breaks during the day, and failure to receive $2.89 allegedly owed for unplanned overtime); Watts v. Kroger Co., 170 F.3d 505, 511-12 (5th Cir. 1999) (change of work schedule and request that employee perform new job tasks); Burger, 168 F.3d at 879 (denial of transfer request to an identical position at a different job site); Webb v. Cardiothoracic Surgery Assocs. of N. Tex., 139 F.3d 532, 540 (5th Cir. 1998) (rude treatment by employer); Messer v. Meno, 130 F.3d 130, 140 (5th Cir. 1997) (monitoring of employee's conversations, criticism of work and conduct, and refusal to consider employee's input in business decisions); Mattern, 104 F.3d at 708 (threats of potential dismissal, verbal reprimands, and low evaluations that could lead to missed pay increases).

citizens have a constitutional right to file lawsuits, tempered by the requirement that the suits have an arguable basis." Scrivener v. Socorro Indep. Sch. Dist., 169 F.3d 969, 972 (5th Cir. 1999).

While there are no reported decisions from this circuit dealing directly with this question,[3] we think it is clear that, given our strict interpretation of retaliation claims, an employer's filing of a counterclaim cannot support a retaliation claim in the Fifth Circuit.  A counterclaim filed after the employee has already been discharged in no way resembles the ultimate employment decisions described in Section 2000e-2(a)(1). We find that the district court committed plain error in instructing the jury that Crawford's counterclaim could support a finding of retaliatory employment action.  This instruction was an obvious misstatement of the law that led to substantial injustice for Crawford.  This claim should not have gotten to the jury in the first place.[4]

---

[3]  There are two unreported Texas district court cases that have considered this question as well; the courts reached different conclusions.  See Gustafson, Inc. v. Bunch, 1999 WL 304560 (N.D. Tex. 1999) (filing of suit by employer after employee was discharged did not constitute an "ultimate employment decision"); Shafer v. Dallas County Hosp. Dist., 1997 WL 667933 (N.D. Tex. 1997) (filing of counterclaim supports Title VII retaliation action).

[4]  Because we find Hernandez's retaliation claim uncognizable under Fifth Circuit law, we do not need to discuss his claims that the evidence presented at trial was insufficient to support the jury's verdict.

IV.  CONCLUSION

We REVERSE the district court's decision denying Crawford's motion for judgment as a matter of law and REMAND with instructions to dismiss Hernandez's retaliation claim.  Costs shall be borne by Hernandez.

DENNIS, J., Circuit Judge, concurring:

I join fully in the per curiam opinion as a correct disposition in accord with our precedents. I write separately only to urge that the en banc court should reconsider our rule that "only an 'ultimate employment decision' by an employer can form the basis for liability for retaliation under Title VII." Opinion at 7 (citing Mattern v. Eastman Kodak Co., 104 F.3d 702 (5th Cir. 1997)). This rule is inimical to both the text and the purpose of the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a). See Mattern, 104 F.3d at 710 (Dennis, J., dissenting). A majority of the federal circuits that have considered the question have held that the protection afforded by the anti-retaliation provision extends to adverse employment actions that, while substantial, fall short of ultimate employment decisions. See Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998); Knox v. State of Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996); Berry v. Stevinson Chevrolet, 74 F.3d 980, 984-86 (10th Cir. 1996); Wyatt v. City of Boston, 35 F.3d 13, 15-16 (1st Cir. 1994); Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987). Indeed, the only other circuit that purports to follow the "ultimate employment decision" rule, the Eighth Circuit, in practice applies something broader. See e.g., Manning v. Metro. Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997) (defining ultimate employment decision to

12

include a "tangible change in duties or working conditions that constituted a material employment disadvantage").