**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 23, 2004**

**Charles R. Fulbruge III**
**Clerk**

REVISED OCTOBER 12, 2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 04-30233
Summary Calendar

---

LORRAINE WASHINGTON, ET AL

Plaintiffs

LORRAINE WASHINGTON

Plaintiff - Appellant

v.

ANN VENEMAN, SECRETARY, DEPARTMENT OF AGRICULTURE

Defendant - Appellee

---

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 02-CV-02678-K

---

Before KING, Chief Judge, and SMITH and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Lorraine Washington appeals the district court's order granting Defendant-Appellee's motion to dismiss and motion for summary judgment in this Title VII action. For the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

following reasons, we AFFIRM.


## I.  Background

Lorraine Washington ("Washington"), an African-American female born January 5, 1956, is employed by the United States Department of Agriculture's National Finance Center (the "NFC") in New Orleans, Louisiana.  On August 30, 2002, after exhausting her administrative remedies, Washington brought this Title VII lawsuit against U.S. Secretary of Agriculture Anne Veneman ("Veneman").[1]  Washington alleges her employer discriminated against her by, inter alia, failing to promote her, denying her request for leave, denying her additional options to repay religious leave, reprimanding her for reading on the job, denying her the use of a floor heater, requiring her to keep a task list of daily duties, allowing rude behavior from supervisors, giving her undeserved poor performance ratings, denying her a performance award, scheduling training on a Holiday Program day, threating disciplinary action, disclosing personal information on an organizational chart, denying adequate work assignments to fill a nine-hour work day, and removing and later replacing items from her desk.  Washington claims that her employer discriminated

---

[1]  The original complaint was brought on behalf of Washington and ten other NFC employees.  On July 17, 2003, the district court granted an unopposed motion to sever the other plaintiffs from Washington's lawsuit.

against her on the basis of race and sex, as well as in retaliation for her various prior Equal Employment Opportunity ("EEO") complaints.[2]

On December 16, 2003, Veneman filed a motion to dismiss under Rule 12(b)(6) and for summary judgment under Rule 56. On January 27, 2004, the district court granted Veneman's motion. The district court held that all of Washington's discrimination claims except three (failure to promote, denial of a request for leave, and denial of additional options to repay religious leave) clearly failed to state a claim for relief and were therefore dismissed under Rule 12(b)(6). Washington v. Veneman, No. Civ.A. 02-2678, 2004 WL 170315, at * 5 (E.D. La. 2004). Although noting that the leave-based claims (denial of leave and denial of opportunities to repay religious leave) more closely resembled actionable claims under Title VII, the court nevertheless dismissed these claims under 12(b)(6) as well. See id. As an alternative holding, the court granted summary judgment on the two leave-based claims. Id. Finally, the district court granted summary judgment in favor of Veneman on the failure-to-promote claim. Id. Washington, who was represented by counsel below, now appeals pro se.

## II. Discussion

---

[2] Washington's complaint also alleged age discrimination, but she no longer maintains that theory on appeal.

## A.  Standards of Review

We review Rule 12(b)(6) dismissals for failure to state a claim de novo.  Gregson v. Zurich Am. Ins. Co., 322 F.3d 883, 885 (5th Cir. 2003).  This court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).  "Thus, the court should not dismiss [a] claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint."  Id.

We also review a district court's grant of summary judgment de novo, applying the same standard as the district court. Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).  Summary judgment is proper when the record, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); see also Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001).  "The moving party is entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

## B. Legal Theories

For each of her various discrimination claims, Washington advances two independent legal theories: disparate treatment (i.e., intentional race and sex discrimination) and retaliation. See 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 2000e-16(a) (2003).

### 1. Disparate Treatment

The McDonnell Douglas burden-shifting framework governs Washington's Title VII claims for disparate treatment.[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, "[a] Title VII plaintiff bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence." LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996) (citing McDonnell Douglas, 411 U.S. at 802). Although the precise articulation of the elements of a prima facie case will vary according to the facts of the case and the nature of the claim, a plaintiff usually satisfies this initial burden by showing that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the employer continued to seek applicants with the plaintiff's qualifications,

---

[3] The McDonnell Douglas framework applies here because Washington offers only circumstantial evidence to support her disparate treatment claims. Evans v. City of Houston, 246 F.3d 344, 348-50 (5th Cir. 2001); see also Kendall v. Block, 821 F.2d 1142, 1145 (5th Cir. 1987).

the employer selected someone of a different race or sex, or that others similarly situated were treated more favorably than she. Id. at 448 & n.3; Evans v. City of Houston, 246 F.3d 344, 348-50 (5th Cir. 2001); Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001); Urbano v. Cont'l Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998).

"Once established, the plaintiff's prima facie case raises an inference of intentional discrimination. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action." LaPierre, 86 F.3d at 448 (citing McDonnell Douglas, 411 U.S. at 802). If the defendant proffers such a legitimate reason, the burden shifts back to the plaintiff to show that the defendant's reason was merely a pretext for discrimination. Rios, 252 F.3d at 378 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 138-42 (2000)). Of course, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves, 530 U.S. at 143 (alteration in original) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Whether summary judgment is appropriate depends on a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and

any other evidence that supports the employer's case and that properly may be considered." Id. at 148-49.

## 2. Retaliation

Washington's claims for retaliation also fall within the McDonnell Douglas burden-shifting framework.[4] See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191-92 (5th Cir. 2001). Accordingly, "the plaintiff carries the initial burden of establishing a prima facie case of retaliation." Id. A plaintiff may satisfy this burden by demonstrating that: (1) she engaged in an activity protected by Title VII, (2) an adverse employment action was taken against her, and (3) a causal link existed between the protected activity and the adverse employment action. Id.; Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996).

The plaintiff's prima facie showing of retaliation establishes an inference of the employer's impermissible retaliatory motive. Fierros, 274 F.3d at 191. Like in disparate treatment cases, the burden then shifts to the employer to produce a legitimate, nonretaliatory reason for the adverse

_____

[4] Again, the McDonnell Douglas framework applies because Washington bases her retaliation claims solely on circumstantial evidence. Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191-92 (5th Cir. 2001) (noting that in direct evidence cases, the burden of proof shifts to the employer to establish by a preponderance of evidence that the same decision would have been made regardless of the protected activity); Moore v. U.S. Dep't of Agric., 55 F.3d 991, 995 (5th Cir. 1995).

employment action.  Id.  Once the employer produces evidence of such a reason, the plaintiff has the ultimate burden of proving that the protected activity was a but-for cause of the adverse employment decision.  Long, 88 F.3d at 305 n.4.  The jury may infer the existence of but-for causation from the combination of the plaintiff's evidence establishing the prima facie case of retaliation and the plaintiff's evidence that the reasons given by the employer are merely pretextual.  Mota v. Univ. Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519 (5th Cir. 2001).

### 3.  Ultimate Employment Actions

We have consistently held that in order to present a prima facie case for either disparate treatment or retaliation, a plaintiff must show that the employer took an "adverse employment action" against the plaintiff.  See, e.g., Pegram v. Honeywell, Inc., 361 F.3d 272, 281-82 (5th Cir. 2004).  In this circuit, only "ultimate employment decisions" qualify as the adverse employment actions necessary to establish a prima facie case of discrimination or retaliation.  Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997); see also Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995) (per curiam) ("Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.").  Ultimate employment decisions include hiring, granting leave, discharging,

promoting, and compensating. <u>Mattern</u>, 104 F.3d at 707; <u>Hernandez v. Crawford Bldg. Material</u>, 321 F.3d 528, 531-32 (5th Cir. 2003) (per curiam) (explaining that the definition of ultimate employment actions in retaliation cases is derived from the definition of discrimination in disparate treatment cases).

**C. Analysis**

**1. Claims Not Constituting Ultimate Employment Actions**

The district court properly dismissed the vast majority of Washington's claims because the employer's actions did not constitute ultimate adverse employment actions. None of the following actions asserted by Washington constitute ultimate employment actions under our jurisprudence: reprimanding for reading on the job, denying the use of a floor heater, requiring an employee to keep a task list of daily duties, rude behavior from supervisors, undeserved poor performance ratings, denying a performance award, scheduling training on a Holiday Program day, threatening disciplinary action, disclosing personal information on an organizational chart, denying adequate work assignments to fill a nine-hour work day, and removing items from the employee's desk and then later replacing them. <u>See, e.g.</u>, <u>Hernandez</u>, 321 F.3d at 532 n.2 (cataloguing Fifth Circuit cases on ultimate employment actions). To find otherwise would transform "every trivial personnel action that an irritable . . . employee did not like [into the] basis of a discrimination suit. The Equal

Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial." Burger v. Cent. Apartment Mgmt., 168 F.3d 875, 879 (5th Cir. 1999) (per curiam) (quoting Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)). Thus, Washington failed to establish a prima facie case for either disparate treatment or retaliation with respect to these claims, and the district court did not err in granting Veneman's motion to dismiss.

## 2. Denial of Leave and Opportunity to Repay Leave

The district court also dismissed Washington's claims that she was denied leave and denied the opportunity to repay leave for a religious holiday on the grounds that these denials did not constitute ultimate employment actions. We have previously listed the denial of leave among those employment decisions that may satisfy the ultimate employment action requirement.[5] E.g., Mattern, 104 F.3d at 707. Notwithstanding the fact that a denial of leave can constitute an ultimate employment action in certain circumstances, we have serious doubts that Washington's particular leave-based claims rise to the level of an ultimate employment decision. We, however, need not decide the issue

---

[5] We also note that Veneman expressly conceded in her motion to dismiss and motion for summary judgment that these two claims satisfied the ultimate employment action element of a prima facie case.

here. Instead, we affirm the district court's alternative grant of summary judgment on the grounds that Washington failed to meet her burden with respect to these two claims on either a disparate treatment or retaliation theory. Cf. Okoye v. Univ. Tex. Houston Health Sci. Ctr., 245 F.3d 507 (5th Cir. 2001) (noting that a court of appeals may affirm on any grounds supported by the record when reviewing a district court order de novo).

Even assuming, arguendo, that Washington established a prima facie case for disparate treatment and retaliation for her claim that she was denied leave, Veneman produced ample evidence showing that the NFC had a legitimate, nondiscriminatory, nonretaliatory reason for the denial. In February 1999, following normal procedure, the NFC asked its employees (including Washington) to schedule leave for the year in advance by designating a first and second choice for vacation time. Washington requested vacation during Christmas, without listing a second choice. NFC policy, however, requires employees to alternate working on major holidays because these vacation periods are consistently in high demand. Because Washington had taken Christmas vacation in 1998, her supervisor asked that she select another time for vacation in 1999. Washington complied with the request, and her second choice for vacation was granted. Thus, the "denial" of leave comported with established internal NFC procedure, and any presumption of discrimination inferred

from Washington's prima facie case therefore disappeared.

Consequently, the burden then shifted to Washington to show that this explanation was merely a pretext for discrimination. She failed to present any evidence, much less sufficient evidence, that this was the case. In the same vein, Washington failed to provide any evidence that she would have been granted her request for vacation but-for her prior EEO activity. The only evidence in the record that even possibly questions the legitimacy of the stated reason is Washington's own affidavit that the NFC did not always follow its vacation policy. This statement, by itself, fails to satisfy Washington's summary judgment burden. See Ramsey v. Henderson, 286 F.3d 264, 269-70 (5th Cir. 2002) (noting that this court "has cautioned that 'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996))). Thus, there is no genuine issue of material fact regarding Washington's retaliation claim, and summary judgment was appropriate. See Long, 88 F.3d at 305 n.4, 308.

For the same reasons, Washington's claim that she was denied the opportunity to repay leave taken for religious holiday in December 2001 fails. NFC policy allows supervisors to grant employees time-off on regular work days for religious observance.

Employees taking such leave, however, must repay the time by working additional hours; otherwise, those hours will be deducted from the employee's paycheck.  The record shows that the NFC provided Washington with the opportunity to repay the religious leave in question.  However, she failed to fill out the necessary forms and was therefore billed for the time she took off.  Plaintiff produced no evidence showing that this reason was merely a pretext for discrimination.  Furthermore, no evidence suggests that Washington would have been allowed to repay her religious leave but-for her EEO complaints.  Accordingly, Washington failed to meet her summary judgment burden on both of her leave-based claims.

### 3.  Failure to promote

Washington similarly failed to meet her summary judgment burden with respect to her claim that the NFC denied her a promotion in July 2000.  Even assuming that Washington established a prima facie case, she did not present evidence showing that the NFC's reasons supporting its promotion decision were pretextual or that she would have been promoted but-for her EEO activity.  Absent a genuine issue of material fact on the matter, the district court properly granted summary judgment.

In September 1999, the NFC advertised two vacancies for a position as Program Analyst, GS-07/09/11.  A promotion panel, consisting of a Personnel Management Specialist (an African-

American female) and three rating members (a White male, an African-American female, and a White female) reviewed, rated, and ranked the applications.  Following NFC procedure, the panel utilized a plan that measured and scored each candidate's proficiency in the four criteria identified in the vacancy announcement.  Each candidate received a total score derived from the four criteria scores.  The highest scoring candidates made the Best Qualified ("BQ") list, which was forwarded to the selecting official for the final promotion decision.

Washington applied for both the GS-7 and the GS-9 positions. Of the 54 candidates that applied for the GS-7 promotion, the top nine made the BQ list.  The cut-off score was 355.  Washington, who scored a 330, did not make the BQ list, and she therefore was not considered for promotion by the selecting official.  Of the 24 applicants for the GS-9 position, seven made the BQ list.  The cut-off score was 320.  Washington scored a 300 and thus did not make the BQ list.  From the BQ lists, the selecting official offered promotions to an African-American male, a White female, and a Hispanic female.

Thus, Veneman established a nondiscriminatory, nonretaliatory basis for the NFC's decision not to promote Washington.  The fact that the selecting official ultimately offered the promotion to an African-American man, a White woman, and a Hispanic woman provides further evidence of the lack of any

discriminatory motive. See Nieto v. L&H Packing Co., 108 F.3d 621, 624 & n.7 (5th Cir. 1997) (stating that the fact that a Hispanic male was replaced by another Hispanic male was material, but not outcome determinative, to its conclusion that the employer did not discriminate). Moreover, nothing in the record suggests that the promotion panel knew anything about Washington's prior EEO complaints, thus demonstrating the unlikelihood of a retaliatory motive. Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 168 (5th Cir. 1999). Therefore, Veneman satisfied her burden under McDonnell Douglas.

In response, Washington utterly failed to provide any evidence that her non-promotion resulted from race or sex discrimination, that the reasons proffered by the NFC were pretextual, or that she would have been promoted but-for her prior EEO activity. The record shows that a number of candidates, in addition to those ultimately selected, were more qualified than Washington. Specifically, 15 candidates (including the nine who made the BQ list) outscored Washington in the GS-7 ratings, and 12 applicants (including the seven who made the BQ list) outscored her in the GS-9 ratings. Washington provided no evidence that she was clearly more qualified than the applicants selected, and therefore her claim for non-promotion must fail. See Price v. Fed. Express Corp., 283 F.3d 715, 723 (5th Cir. 2002) ("We have held in previous cases that a showing

that the unsuccessful employee was clearly better qualified is enough to prove that the employer's proffered reasons are pretextual. . . . Showing that two candidates are similarly qualified does not establish pretext under this standard."); Odom v. Frank, 3 F.3d 839, 845-47 (5th Cir. 1993).

After carefully reviewing the record, we conclude that Washington has failed to offer evidence that, when viewed in the light most favorable to her, would allow a rational fact-finder to make a reasonable inference that the NFC's proffered reasons for its employment actions were merely a pretext for discrimination or retaliation. See Ramsey 286 F.3d at 269-70; Grimes v. Tex. Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 143 (5th Cir. 1996) (affirming summary judgment because plaintiff offered insufficient evidence to show that the defendant's articulated reasons were pretextual). Hence, the district court did not err in granting summary judgment in favor of Veneman.

## III. Conclusion

For the forgoing reasons, we AFFIRM the judgment of the district court.