**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 5, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 06-60215
Summary Calendar

PAMELA ELLIS,

Plaintiff-Appellant,

versus

ANTHONY J. PRINCIPI, Secretary, Department of Veterans Affairs,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:03-CV-357

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Pamela Ellis, *pro se*, appeals the dismissal on summary judgment of her claims against

defendant Anthony Principi, Secretary of the United States Department of Veterans Affairs. We

affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and
is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

# I. FACTS AND PROCEEDINGS

Pamela Ellis, a black woman, worked at the G.V. "Sonny" Montgomery Veterans Hospital ("VA Hospital") in Jackson, Mississippi, beginning in August 1996. In April 1999, she was transferred to Unit 4C North, where she alleges that her coworkers engaged in a pattern of discrimination and harassment based on her race, sex, and religion (Pentecostal). Ellis filed three formal complaints with the Equal Employment Opportunity Commission ("EEOC"), which found by a preponderance of the evidence that discrimination had not occurred. Ellis timely filed suit in federal court.

In her federal lawsuit, Ellis alleges that she was subjected to a hostile work environment based on her race and religion, reprisal for previous EEOC activity, and denial of a reasonable accommodation of her religion. Ellis also asserts that she is entitled to damages for intentional infliction of emotional distress ("IIED").

The district court granted Principi summary judgment on all of Ellis's claims and dismissed her action. Ellis timely appealed. She asserts that the district court erred by allowing the defendant to file a motion for summary judgment after the deadline established by the court's pretrial order; she further asserts that the district court made factual errors and failed to consider relevant evidence.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We apply the same standard as the district court and construe all facts

and inferences in the light most favorable to the non-moving party. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

Because Ellis filed this action *pro se*, the court must judge her pleadings by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *accord Guerrero v. Hauck*, 502 F.2d 579, 580-81 (5th Cir. 1974). Nevertheless, plaintiff's *pro se* status does not exempt her from the usual evidentiary requirements of summary judgment. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

### III. DISCUSSION

Ellis alleges two errors below. She first asserts that the district court improperly allowed the defendant to move for summary judgment after the court's deadline for such motions had passed. Trial was set to commence on November 14, 2005, with a pre-trial conference scheduled for October 17, 2005. In its scheduling order, the district court required that the parties submit any motions, apart from motions *in limine*, by July 28, 2005.[1] On July 1, 2005, the district court extended the deadline to September 12, on a motion by the defendant. On October 17, the district court made an undocketed minute entry in which it allowed Principi's summary judgment motion to be filed on that day, with the plaintiff's response due on October 31. The district court simultaneously ordered that the pre-trial conference date would be reset after it decided the motion for summary judgment. The district court has wide discretion to control its own docket and adjust filing deadlines as needed. *See, e.g., Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995). Here, it allowed the defendant to file a motion for summary judgment nearly one month before the scheduled trial date

---

[1] The district court's order reads "July 28, 2004," but since the order was issued on December 30, 2004, this is obviously a typographical error.

and rescheduled the pre-trial conference accordingly. Ellis does not allege that she suffered any prejudice as a result of the district court's action. We find no abuse of discretion.

Ellis also asserts that the district court made "factual errors" in reaching its conclusions as to the viability of her claims. Ellis does not consistently link her assertions to any evidence in the record, making an evaluation of her arguments difficult. Because the court is obliged to review the grant of summary judgment de novo, we look to see whether the evidentiary record supports the district court's findings as to each of her claims. Ellis alleges both a hostile work environment and disparate treatment based on her race, gender, and religion; retaliation for her efforts at reporting allegedly discriminatory behavior; and failure to accommodate her religious beliefs. She also alleges that she should recover for intentional infliction of emotional distress. The district court dismissed all of her claims.

## A.    Initial discrimination

## (1)    Disparate treatment

Ellis characterizes several incidents as evidence of both disparate treatment and a hostile work environment. To prevail on a claim for disparate treatment, Ellis must first establish a *prima facie* case of racial discrimination by showing: 1) she belongs to a protected class; 2) she was qualified to do her job; 3) despite her qualifications, her employment situation was adversely affected; 4) and her position was filled by someone outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Ellis were successful, the burden would shift to Principi to proffer a legitimate, nondiscriminatory reason for the decision. *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To establish a *prima facie* case of discrimination, a plaintiff must show that she suffered an "ultimate employment decision." *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002).

4

"'Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating.' " *Id.* (quoting *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995)).

Ellis claims that she was subjected to disparate treatment because she was given less favorable work assignments than two other employees: Roosevelt Davis, a black man, and Katherine Payment, a white woman. Such an allegation is insufficient to sustain a disparate treatment claim because Ellis alleges no ultimate employment decision. Ellis also claims that she was denied a performance award, which is also not an ultimate employment decision. *See Washington v. Veneman*, 109 F. App'x 685, 689 (5th Cir. 2004). Ellis alleges that her supervisor required her to use leave time to compensate for arriving late, but the supervisor did not require another employee to follow the same procedure. Ellis alleges that the supervisor's decision conflicted with a verbal agreement between them that typically allowed her to arrive late for work without expending any leave time. A decision by a supervisor with respect to leave time can hardly be considered an ultimate employment decision when the supervisor merely chooses to enforce the employer's protocol. Consequently, Ellis fails to state a claim for disparate treatment.

**(2)    Hostile work environment**

To prevail on a hostile work environment claim, Ellis must prove that: 1) she belongs to a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment complained of was based on her membership in a protected class; and 4) the harassment affected a term, condition, or privilege of employment. *Frank v. Xerox Corp.,*
347 F.3d 130, 138 (5th Cir. 2003). She must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Id.* (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). To determine whether conduct creates a hostile work

environment, the court must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interfered with her work performance. *Id.*

Ellis asserts that her supervisors' alleged malevolent acts, detailed above, combined with statements allegedly made by her coworkers to produce a hostile work environment. Ellis alleges that in September of 1999, she heard coworkers refer to her as Mother Theresa. Ellis further alleges that in October of 1999, she overheard the following comments from coworkers, all of which she assumed to be directed at her: "yea, I can tell you about them church folks, yea!"; "you mean to tell me a man died on a tree for something like that"; and "she must have been out doing a rain dance or something." Even assuming that these comments were directed at her, they were not so severe or pervasive as to amount to a change in the terms and conditions of her employment. Ellis alleges that on January 11, 2000, a coworker stated that she was "full of sh-t" and then stood up in a threatening manner. She further alleges that on January 13, 2000, coworkers shouted "I told you I can make 'em run! Look at her! Yeah, she's scared." Ellis does not connect these incidents to her membership in a protected category, and there is no obvious reason to conclude that the harassment was based on her race, sex, or religion.

Ellis asserts that delays in forwarding her pay stubs, W-2 form, and workers' compensation form after she switched units at the hospital created a hostile work environment. Again, these allegations do not contain any connection, either explicit or implicit, between her membership in a protected class and the alleged activity. Ellis also claims that her supervisors and coworkers closely monitored her time and attendance and that her supervisor declined to grant her a performance award. Though she asserts that she was treated differently because of her race, she offers no evidence of this.

6

Moreover, careful monitoring of job performance and a decision not to grant a discretionary award, absent any other evidence of prohibited discrimination, does not suffice to support a claim for hostile work environment. Ellis's claims all fail to meet the requirements of a claim under Title VII, and thus the district court properly dismissed them.

**(3)     Failure to accommodate**

Ellis alleges that her employer refused to allow her to take a night off to attend weekly church services in September 1999 and only reinstated the night off after Ellis filed a complaint with the EEOC. An employee establishes a *prima facie* case of religious discrimination by establishing that: (1) she had a bona fide religious belief that conflicted with an employment requirement; (2) the employer was informed of that belief; and (3) the employee was discharged or disciplined for failing to comply with the conflicting employment requirement. *Weber*, 199 F.3d at 273; *Turpen v. Mo.-Kan.-Tex. R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984). Here, Ellis does not even allege that she was subjected to any adverse employment action, much less a discharge or disciplinary action, because of her conflict with the VA Hospital's preferences with regard to her days off. In fact, Ellis's employment with the VA Hospital ended when she applied for and was granted disability leave nearly three years after the hospital allegedly failed to accommodate her preferences. Consequently, Ellis has failed to establish one element of her *prima facie* case for failure to accommodate, and her claim was dismissed on this basis.

**B.     Retaliatory Action**

Ellis also contends that her coworkers subjected her to retaliatory action because of her repeated EEO claims. She asserts that one of her coworkers confronted her and told her she was "full of sh-t," that her employer did not timely forward her W-2 form, correspondence instructing her to

7

return to duty, and pay stubs to her, that her request for placement in the leave share program was delayed, and that she was "being positioned to subsequently be placed in AWOL status." As with a claim of disparate treatment, a plaintiff must show that she was subject to an adverse employment action that was an "ultimate employment decision," in order to prove a retaliation claim. *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003). Ellis has not alleged any activity that would qualify as an ultimate employment decision, and consequently the district court correctly dismissed her claims.

## C.      Intentional infliction of emotional distress

It is clear from the facts alleged that Ellis's IIED claim fails. Under Mississippi law, the standard for such a claim "is very high: the defendant's conduct must be 'wanton and wilful and [such that] it would evoke outrage or revulsion.'" *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002) (quoting *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995)). Employment disputes do not ordinarily sustain claims for IIED. *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982n83 (N.D. Miss. 1996). The conduct alleged and described above does not meet this standard, and Ellis thus may not recover on her claim for IIED.

## D.      Post-employment reprisal

Ellis also asserts on appeal that she has been subjected to retaliatory action since leaving the VA Hospital because she received a letter on October 4, 2005, stating that her disability-based retirement was under review by the VA hospital. Since Ellis did not raise this claim in the district court, it is not before this court on appeal.

### IV. CONCLUSION

Because the district court properly dismissed Ellis's claims, we AFFIRM.