# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00827-COA

HENRY "BUNKY" PARTRIDGE                                                  APPELLANT

v.

CITY OF MERIDIAN                                                              APPELLEE

DATE OF JUDGMENT:             06/22/2021
TRIAL JUDGE:                  HON. CHARLES W. WRIGHT JR.
COURT FROM WHICH APPEALED:    LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       DANIEL MYERS WAIDE
ATTORNEYS FOR APPELLEE:       WILLIAM C. HAMMACK
                              WILLIAM WYATT SIMMONS
NATURE OF THE CASE:           CIVIL - OTHER
DISPOSITION:                  AFFIRMED - 11/15/2022
MOTION FOR REHEARING FILED:

### BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Henry "Bunky" Partridge, a former longtime employee of the City of Meridian, sued the City, alleging that he had been forced to resign in violation of the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). The circuit court granted the City's motion for summary judgment because Partridge failed to produce evidence that he had engaged in any protected activity (i.e., that he had opposed any conduct made unlawful by Title VII). The circuit court correctly held that there was no genuine issue of material fact and that the City was entitled to summary judgment. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The City employed Partridge in various positions from 1974 to 2009. In 2009,

Partridge was not retained by the City's newly elected mayor and left city employment. When Percy Bland was elected mayor in June 2013, he appointed Partridge to be the City's Homeland Security Director. In July 2015, Bland appointed Partridge to be the Director of the City's Community Development Department. In December 2015, Bland appointed Richie McAlister as the City's Chief Administrative Officer (CAO). As CAO, McAlister was Partridge's supervisor. For the next eighteen months, Partridge and McAlister had a positive working relationship.

¶3.    In June 2017, Bland was reelected. Following the election, a newly elected city council member, Weston Lindemann, informed McAlister that a former city council member, Bobby Smith, had urged Lindemann to vote against McAlister's anticipated reappointment as CAO. Lindemann's "only connection" to Smith was that Partridge had introduced them "on the campaign trail." For that reason, Lindemann "assumed" that Smith had contacted him at Partridge's request.[1] Lindemann apparently shared his assumption with McAlister.

¶4.    On June 13, 2017, McAlister confronted Partridge outside of city hall. According to Partridge, McAlister stated that he had learned from another city council member that Partridge had organized "a group of people to have [McAlister] removed" so that Partridge could "take over" as CAO. Partridge denied McAlister's allegations, but McAlister did not believe him and stated, "I'm going to have your ass."

---

[1] Another city council member, Kim Houston, testified that based on her discussions with Partridge, she understood that Partridge did not want McAlister to be reappointed.

2

¶5.     Partridge notified Bland about the confrontation, and on June 14, 2017, Bland called a meeting with both Partridge and McAlister.  Partridge testified that during the meeting, he stated as follows: "Mayor, I'm not going to have [McAlister's] harassment.  I'm not going to do it. . . . Mayor, I want a complaint -- EEOC complaint filed."  In his deposition, Partridge made clear that he wanted Bland to file an EEOC (Equal Employment Opportunity Commission) complaint for him.  Bland said he would "look into [Partridge's] complaint," but he told both men that they were going to be reappointed and therefore needed to "get along."  Both men were reappointed and confirmed to their respective positions, and Partridge even received a raise.

¶6.     On September 5, 2017, Bland asked Partridge to use some of his leave time while Bland conducted a review of the Community Development Department.  Bland testified that while Partridge was on leave, he personally interviewed employees in the department and learned that Partridge had failed to implement initiatives that were important to Bland.

¶7.     Bland met with Partridge again on October 5, 2017.  The City's Parks and Recreation Director, Kelvin McGruder, and the City's Human Resources Director, Chrissie Walker-Nettles, were also present.  According to Partridge and McGruder, Bland stated that he had to let Partridge go because of his inability to get along with McAlister.  In contrast, Bland and Walker-Nettles testified that Partridge offered to resign after Bland stated he had lost confidence in him due to his failure to implement Bland's initiatives.  In any event, during the meeting, Partridge either offered to resign or agreed to resign only to avoid being fired.

3

Partridge then signed a resignation letter and was allowed to use his remaining leave time and make his resignation effective December 19, 2017.

¶8. On December 6, 2017, Partridge filed a charge of discrimination with the EEOC, alleging that McAlister had "threatened [his] employment." Partridge further alleged that he had "informed Mayor Bland that [he] wanted to file a complaint against Mr. McAlister," but Bland "refused to take the complaint" and said, "We just need to get along." Partridge stated that he believed that he was "being constructively discharged, and retaliated against for complaining, in violation of Title VII of the Civil Rights Act of 1964." Partridge also asserted that he was "being discriminated against because of [his] age (63) in violation of the Age Discrimination in Employment Act" ("ADEA"). In May 2018, the EEOC issued a dismissal and notice of a right to sue, stating that based on the information the agency had received, it was unable to find that there had been a violation of any relevant statute.

¶9. Partridge then filed a complaint in the Lauderdale County Circuit Court against the City, Bland in his official capacity as mayor, and McAlister in his official capacity as CAO[2] and in his individual capacity. Partridge alleged that the defendants had violated his First Amendment rights by retaliating against him for engaging in protected speech, namely, complaining to Bland about McAlister's threats. He also alleged that the defendants had

---

[2] "A suit against a public official in his official capacity is nothing more than a suit against the entity." *Mosby v. Moore*, 716 So. 2d 551, 557 (¶30) (Miss. 1998). In the circuit court, Partridge confessed that his official-capacity claims against Bland should be dismissed, and the court entered an order dismissing those claims with prejudice. Bland is not a party to this appeal.

4

violated Title VII "by retaliating against [him] for telling [Bland] that [he] desired to file an EEOC complaint regarding the workplace harassment and intimidation."

¶10.    Following discovery, the City moved for summary judgment. In response, Partridge withdrew his First Amendment claim, and the circuit court entered an order granting partial summary judgment and dismissing that claim with prejudice. In addition, Partridge confessed that had not been discriminated against based on his age.[3] Thus, Partridge's only remaining claim was that the City had retaliated against him in violation of Title VII. The City argued that Partridge had failed to establish a prima facie case under Title VII because Partridge had not engaged in any protected activity or opposed any discrimination prohibited by Title VII. The circuit court agreed and granted the City's motion for summary judgment. Partridge then appealed.[4]

## ANALYSIS

¶11.    We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Angle v. Koppers Inc.*, 42 So. 3d 1, 4 (¶6) (Miss. 2010). Summary judgment shall be granted "if the pleadings, depositions, answers to

---

[3] Partridge had already admitted during his deposition that he did not believe he had been discriminated against based on his age.

[4] The circuit court certified its order granting summary judgment in favor of the City as final pursuant to Mississippi Rule of Civil Procedure 54(b), and Partridge filed his notice of appeal from that order. McAlister, who was represented by separate counsel in the circuit court, filed a separate motion for summary judgment. After Partridge filed his notice of appeal, the circuit court granted McAlister's motion for summary judgment and dismissed all claims against McAlister with prejudice. Partridge did not appeal from the order dismissing his claims against McAlister, and McAlister is not a party to this appeal.

5

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "[The non-moving] party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

¶12. Title VII makes it unlawful for an employer to discriminate against an employee because of the employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In addition, Title VII makes it unlawful for an employer to discriminate against any employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII]." *Id.* § 2000e–3(a). Likewise, the ADEA makes it unlawful for an employer to discriminate against an employee because of an employee's age or because the employee "has opposed any practice made unlawful by [the ADEA]." 29 U.S.C. § 623(a), (d).[5]

¶13. In the present case, Partridge does not allege that he was discriminated against based on his age, race, color, religion, sex, or national origin. As noted above, in his EEOC filing,

---

[5] Partridge failed to cite the ADEA in his complaint or amended complaint. Indeed, it does not appear that Partridge ever specifically mentioned the ADEA in the circuit court. We note the parallel provisions of the ADEA only because Parker referenced that statute in his initial filing with the EEOC. In any event, "analysis of retaliation claims is the same for ADEA claims as it is for Title VII claims." *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 n.1 (5th Cir. 2003).

Partridge asserted that the City had discriminated against him on account of his age, but he later admitted that his age had nothing to do with any alleged adverse employment action. In addition, Partridge has never asserted that the City discriminated against him based on any status protected by Title VII. Indeed, the record does not even make clear the races of the various parties involved in this case. Partridge's only claim is a "retaliation" claim.

¶14. "To establish a prima facie case for retaliation, a plaintiff must show (1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Mollaghan v. Varnell*, 105 So. 3d 291, 305 (¶37) (Miss. 2012) (quotation marks, brackets, and footnote omitted). As relevant here, Partridge alleges that he engaged in protected activity when he "opposed [a] practice made . . . unlawful . . . by [Title VII]." 42 U.S.C. § 2000e–3(a). Specifically, he alleges that he opposed an unlawful employment practice when he allegedly told Bland that he wanted Bland to file an EEOC complaint.

¶15. The circuit court correctly held that the City was entitled to summary judgment because Partridge failed to come forward with any evidence that he engaged in any protected activity or opposed any practice made unlawful by Title VII. Partridge complained to Bland about his confrontation with McAlister, and Partridge told Bland that he was "not going to have [McAlister's] harassment." But Partridge never complained to Bland or any other city official that McAlister had harassed him on account of his age, race, or any other protected

7

status.[6]  Indeed, the evidence is undisputed that the confrontation between Partridge and McAlister was based entirely on McAlister's belief that Partridge opposed his reappointment as CAO and was "out to get [him]."  The evidence is also clear that Partridge knew of the reason for McAlister's animus, which had nothing to do with age, race, or any other protected status.  According to Partridge, he asked Bland to file an "EEOC complaint," but Partridge never "opposed any practice made . . . unlawful . . . by [Title VII]."  42 U.S.C. § 2000e–3(a).  Partridge apparently thought any type of workplace "harassment"—regardless of its underlying motivation—was a basis for an "EEOC complaint."  But Partridge's misunderstanding of the EEOC's role and authority does not transform his dispute with McAlister into protected opposition to unlawful discrimination.

¶16.  "Title VII . . . does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted).  Title VII only prohibits discrimination on those grounds set out in the statute.  Therefore, it follows that Title VII's anti-retaliation provision "protects an employee only from retaliation *for complaining about the types of discrimination it prohibits*."  *Brackens*

---

[6] We mention age here even though, as noted above, Partridge failed to assert a claim under the ADEA in the circuit court.  But we also note that "it is well-established that a Title VII retaliation claim may not be based on an employer's adverse response to ADEA-protected conduct." *Faulconer v. Centra Health Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020) (quotation marks and brackets omitted).  Thus, any claim that the City retaliated against Partridge for complaining about age discrimination would fail for the additional reason that Partridge failed to assert a claim under the ADEA.  *Id.* ("Title VII does not prohibit retaliation for complaining about *age* discrimination.").

*v. Stericycle Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020) (emphasis added) (quotation marks omitted). Here, Partridge complained to Bland about alleged "harassment," but he did not complain about any type of discrimination prohibited by Title VII or, for that matter, the ADEA. Accordingly, Partridge's claim failed as a matter of law, and the circuit court properly granted the City's motion for summary judgment.[7]

## CONCLUSION

¶17. Partridge's retaliation claim fails because he failed to present any evidence that he had "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). Therefore, the circuit court correctly held that the City was entitled to summary judgment.

¶18. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

---

[7] *See, e.g., Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021) (holding that an employee's retaliation claim failed because he complained that "he was being 'targeted' and treated unfairly," but his "complaint . . . did not mention a reason for this treatment and certainly did not attribute it to race"); *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 798 (8th Cir. 2019) (holding that an employee's retaliation claim failed because she complained about "unfair" treatment but did not attribute it to unlawful discrimination); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3rd Cir. 1995) (holding that an employee's retaliation claim failed because the employee only complained that he had been treated unfairly and passed over for promotion in favor of "a less qualified individual" but never alleged "explicitly or implicitly . . . that age was the reason for the alleged unfairness"); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.").