United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 29, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30080
Summary Calendar

_____

SHIRLEY J WILLIAMS

Plaintiff - Appellant

v.

UNITED STATES DEPARTMENT OF THE NAVY, HANSFORD T JOHNSON, ACTING
SECRETARY, JOSEPH LAUX

Defendants - Appellees

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 03-CV-2060

_____

Before KING, Chief Judge, and HIGGINBOTHAM and PRADO, Circuit
Judges.

PER CURIAM:[*]

Plaintiff-Appellant Shirley Williams appeals the district

court's order granting Defendant-Appellee's motion for summary

judgment and awarding Defendant-Appellee costs in this Title VII

_____

[*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

action.  For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shirley Williams, an African-American female, began working for the U.S. Department of the Navy (the "Navy") in May 1997 as a civilian in the Primary Care Clinic at the Branch Medical Center, Naval Air Station, Joint Reserve Base in Belle Chasse, Louisiana. The Navy employed Williams as a registered nurse, diabetic educator, and clinical nurse specialist in the Primary Care Clinic.

On July 8, 1998, Petty Officer Joseph Laux, a male coworker of Williams, entered the women's restroom while Williams was inside.  Williams asked Laux to leave and felt threatened by his refusal.  Williams reported the incident to her immediate supervisor, Lieutenant Commander Snow.  She also reported the incident to the Command's Equal Employment Opportunity ("EEO") officer, Lieutenant Pruitt, on July 13, 1998.

On July 14, 1998, Williams and Laux had an argument in Laux's office after Williams asked Laux for a replacement fax toner.  Williams alleges that during this incident, Laux questioned her about why she needed the toner, and when she asked him when she could receive the toner, he told her to get out of his office.

On July 24, 1998, Snow held a meeting with Williams and Laux

concerning the July 8, 1998 and July 14, 1998 incidents. On July 28, 1998, Snow wrote a memorandum documenting the sequence of events, calling the incidents "worksite conflicts." Snow did not, however, place the memorandum in either Williams's or Laux's official personnel file.

In August 1998, Pruitt advised Williams to contact the civilian EEO office in New Orleans, Louisiana. On or around August 5, Williams spoke with an intake coordinator in the New Orleans office, who told her that someone would contact her. Williams claims that she made several unreturned phone calls to the New Orleans office. On September 17, 1998, Williams faxed a memorandum to the New Orleans office, requesting that an EEO representative contact her. An EEO counselor for naval support activity contacted her in October 1998.

During this time, Williams's problems with Laux continued. On September 15-16, 1998, Laux granted leave to two corpsmen assigned to the Primary Care Clinic without notifying Williams. On September 18, Laux closed the Primary Care Clinic, which cancelled Williams's patient appointments without her permission.

In November 1998, Snow moved Williams's work station to outside of Snow's office and assigned Williams telephone triage duties, which prevented her from having any physical contact with patients or other clinic staff. In addition, Laux had to pass Williams's new work location on a daily basis to visit Snow in

her office.  After being in this new location for approximately one week, Williams complained to Captain Ayers about her relocation and change of duties, and she was immediately returned to her original work station in the Primary Care Clinic with her original duties.

In January 1999, the Navy hired a diabetic educator from Keesler Air Force Base to work in the Primary Care Clinic.  This decision removed Williams's duties as a diabetic educator, which had comprised twenty percent of her overall duties, but it did not reduce her overall salary.

Williams received a letter dated March 13, 1999 from an EEO counselor informing her that the New Orleans office had transferred her informal complaint of alleged discrimination to the Fort Worth, Texas EEO office for processing.  This letter also advised Williams that she should contact an EEO counselor within forty-five days of any alleged discriminatory act.[1]  On August 10, 1999, an EEO counselor issued a report stating that the parties had failed to reach an informal resolution to Williams's informal complaint.  On December 30, 1999, the Navy accepted for investigation two of Williams's claims, including the July 8, 1998 restroom incident with Laux and the claim of

---

[1] 29 C.F.R. § 1614.105(a)(1) provides that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."

retaliation for reporting it.

On March 29, 2002, an administrative law judge from the New Orleans EEO office dismissed Williams's complaint, finding that her allegations, even if true, did not state valid causes of action for her Title VII claims. On May 2, 2003, the Navy issued its final order denying Williams's EEO complaint.

On July 18, 2003, Williams timely filed suit in federal district court, alleging claims of sexual and racial discrimination, retaliation, and sexual harassment from July 1998 through September 2003. See 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 2000e-16(a) (2000). On November 12, 2003, the Navy filed a motion for summary judgment, arguing that Williams had failed to exhaust her administrative remedies by initiating her EEO complaint more than forty-five days after the alleged discrimination occurred.

On January 30, 2004, the parties consented to have their dispute handled by a magistrate judge pursuant to 28 U.S.C. § 636(c). On April 19, 2004, the magistrate judge denied the Navy's motion for summary judgment, determining that material facts remained in dispute regarding whether Williams was actually or constructively aware of the forty-five day deadline and whether the Navy's actions misled Williams with regard to the forty-five day requirement.

On October 26, 2004, the Navy filed a second motion for

summary judgment, arguing that: (1) no genuine material facts were at issue regarding Williams's claims; and (2) Williams failed to exhaust her administrative remedies concerning the incidents of alleged discrimination. On December 16, 2004, the magistrate judge granted the motion for summary judgment and awarded costs to the Navy. Specifically, the magistrate judge granted the Navy's motion for summary judgment for failure to exhaust administrative remedies for Williams's claims arising after May 3, 1999.[2] As for Williams's claims arising before May 3, 1999, the magistrate judge granted summary judgment on the ground that Williams had failed to establish a prima facie case for her sex and race discrimination, hostile work environment sexual harassment, and retaliation claims.

On January 7, 2005, Williams filed a notice of appeal. On appeal, she challenges the district court's grant of summary judgment on her Title VII claims for hostile work environment,

---

[2] Williams's September 17, 1998 memorandum to the New Orleans EEO office was untimely on its face because it was filed more than forty-five days after the alleged incidents of discrimination occurred. See 29 C.F.R. § 1614.105(a)(1). However, the magistrate judge found that disputed facts still existed concerning whether Williams was actually or constructively aware of the forty-five day deadline before she received actual notice of the forty-five day deadline from the EEO counselor's letter dated March 13, 1999. Allowing forty-five days plus three days for mailing, and accounting for the weekends, the magistrate judge held that Williams's complaints after May 3, 1999 were time-barred because she had actual notice of the forty-five day requirement as of the EEO letter dated March 13, 1999. Williams does not challenge this holding on appeal.

sex discrimination, and retaliation. She also challenges the district court's award of costs.[3]

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001). Summary judgment is proper when the record, viewed in the light most favorable to the nonmoving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." See FED. R. CIV. P. 56(c) (emphasis added); see also Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." Id. at 248-49 (citing FED. R. CIV. P. 56(e)).

---

[3] Williams does not challenge the district court's grant of summary judgment on her racial discrimination claim or on her claims for alleged incidents of discrimination occurring after May 3, 1999, for which she failed to exhaust her administrative remedies. Accordingly, we will not consider these issues on appeal. See FED. R. APP. P. 28(a)(9); 5TH CIR. R. 28.3(j).

## III. DISCUSSION

## A. Title VII Claims

### 1. Hostile Work Environment

Williams argues that the district court improperly granted summary judgment in favor of the Navy on her hostile work environment claim. According to Williams, she established a prima facie case of hostile work environment. Williams alleges that Laux created a hostile work environment by entering and refusing to leave the women's restroom, yelling and displaying anger toward her over the fax machine toner, and circumventing her authority in the Primary Care Clinic on September 18, 1998 by cancelling her patient appointments without consulting her.

To establish a prima facie case of hostile work environment, a plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 523 (5th Cir. 2001). Because the district court found that only the fourth and fifth elements were in dispute and because no party challenges this finding on appeal, we will not address the first three elements.

"For harassment to affect a term, condition, or privilege of

employment, it must be both objectively and subjectively abusive." Hockman v. Westward Communications, LLC, 407 F.3d 317, 325 (5th Cir. 2004); accord Faragher v. City of Boca Raton, 524 U.S. 777, 787 (1998) ("[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive . . . ."). This court determines whether a work environment is objectively hostile or abusive by considering the totality of the circumstances, including such factors as the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with an employee's work performance. Hockman, 407 F.3d at 325-26. We recently held that to survive summary judgment, "the harassment must be 'so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place.'" Id. at 326 (quoting Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999)). For harassment to qualify as severe or pervasive, the alleged conduct must be more than isolated incidents. Id.; see also Faragher, 524 U.S. at 788 (noting that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" (internal quotation marks and citation omitted)).

Williams has failed to establish a prima facie case of

hostile work environment because Laux's conduct was not severe or pervasive. See Hockman, 407 F.3d at 326. Williams's sexual harassment claim consists of only three incidents involving Laux. When compared to cases in which this court has afforded relief, these incidents were simply not frequent or serious enough to alter Williams's work environment. Compare id. at 328-29 (finding that the defendant's actions of making one remark to the plaintiff about another employee's body, slapping the plaintiff on her behind with a newspaper, grabbing or brushing against the plaintiff's breast or behind, attempting to kiss the plaintiff on one occasion, and standing in the door of the women's bathroom while the plaintiff was washing her hands were isolated, nonserious events that did not qualify as a hostile work environment), with Mota, 261 F.3d at 524 (finding that repeated sexual advances in the face of adamant refusals by the plaintiff were sufficiently extreme to qualify as a hostile work environment). Because we find that Williams cannot show that the harassment affected a term, condition, or privilege of her employment, the district court properly granted summary judgment on Williams's hostile work environment claim.

**2. Sex Discrimination**

Williams next argues that the district court improperly granted summary judgment in favor of the Navy on her sex discrimination claim brought under Title VII. According to

Williams, she established a "strong discrimination case" by alleging that: (1) Snow relocated Williams to a space outside of Snow's office with telephone triage duties for one week; and (2) the Command replaced twenty percent of Williams's duties as diabetic educator without a reduction in salary.

The Navy contends, and Williams does not dispute, that the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), governs Williams's Title VII claim for sex discrimination. Under the McDonnell Douglas framework, a plaintiff carries the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802. To maintain a prima facie case of sex discrimination, a plaintiff must establish that: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) her employer treated others similarly situated more favorably. Urbano v. Cont'l Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998). Because there is no dispute that Williams satisfies the first two elements, we need to consider only the third and fourth elements.

In this circuit, a plaintiff must show that the employer made an ultimate employment decision to establish that the plaintiff has suffered an adverse employment action. Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 531 (5th Cir.

2003). Ultimate employment decisions include hiring, discharging, promoting, compensating, and granting leave. Id. This court has found that the loss of some job responsibilities does not qualify as an ultimate employment decision. See Mota, 261 F.3d at 521; see also Hernandez, 321 F.3d at 532 n.2 (listing cases with activities that this circuit has held do not constitute ultimate employment decisions); Watts v. Kroger Co., 170 F.3d 505, 511-12 (5th Cir. 1999) (finding that a change in the employee's work schedule and a request that the employee perform new job tasks were not ultimate employment decisions). Although Williams has alleged that she was relocated with new job responsibilities for one week and that the Navy removed twenty percent of her job duties without a reduction in pay, these allegations do not involve ultimate employment decisions by the Navy. See Mota, 261 F.3d at 521. Accordingly, the district court properly granted the Navy's motion for summary judgment.

### 3. Retaliation

Williams next argues that the district court incorrectly granted summary judgment in favor of the Navy on her retaliation claim on the basis that she did not establish a prima facie case of retaliation. According to Williams, the relocation of her work station for one week and the loss of her diabetic education duties constitute retaliation.

This court analyzes retaliation claims under the McDonnell

Douglas framework, so Williams bears the initial burden of proving a prima facie case of retaliation by a preponderance of the evidence. Hockman, 407 F.3d at 330. To establish a prima facie case of retaliation, Williams must show that: (1) she engaged in a protected activity as described in Title VII; (2) she suffered an adverse employment action; and (3) a causal nexus existed between the protected activity and the adverse employment action. Mota, 261 F.3d at 519.

For the reasons stated previously, Williams has failed to show that the Navy's actions constituted an adverse employment action. Accordingly, the district court correctly granted summary judgment on Williams's retaliation claim.

## B. Award of Costs

Finally, Williams raises two arguments on appeal relating to the district court's award of costs to the Navy. First, she argues that the district court erred in awarding costs because Louisiana law does not allow a court to award costs not originally demanded by a party unless certain criteria are met. Second, she contends that the district court erred in awarding costs because the Navy did not request costs but specifically prayed that each party bear its own costs.

FED. R. CIV. P. 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." This rule

further requires that the opposing party object to the bill of costs within five days after costs are taxed. See id. ("On motion served within 5 days [after costs are taxed], the action of the clerk may be reviewed by the court."). In Prince v. Poulos, 876 F.2d 30, 33 (5th Cir. 1989), the appellant contended, as Williams does now, that the appellees should not be awarded costs because they did not specifically request them. We rejected this argument, instead finding that the appellant waived his objection to the bill of costs because he failed to object to the costs within the five-day period under FED. R. CIV. P. 54(d). Id. at 34. Because Williams similarly has failed to file a motion objecting to the award of costs within the five-day period, we find that Williams has waived her objection to the bill of costs. Therefore, we need not reach the merits of Williams's argument.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.