In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1200

KYLL LAVALAIS,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF MELROSE PARK, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-06921 — **Robert W. Gettleman**, *Judge*.

ARGUED SEPTEMBER 24, 2013 — DECIDED OCTOBER 24, 2013

Before POSNER, TINDER, and HAMILTON, *Circuit Judges*.

TINDER, *Circuit Judge*. Kyll Lavalais, a sergeant with the
Village of Melrose Park Police Department, sued his em-
ployer, the Village of Melrose Park, and the Chief of Police,
Sam Pitassi, under Title VII and 42 U.S.C. § 1983, alleging
race discrimination and retaliation. The district court grant-
ed the defendants' motion to dismiss for failure to state a
claim and Lavalais appealed. For the reasons that follow, we

vacate the dismissal of the race discrimination claims, affirm the dismissal of the retaliation claims, and remand.

### I. Background

Plaintiff Lavalais is employed by the Village of Melrose Park as a police officer. He is the only black officer in the police department, which has approximately seventy-five officers. He has been employed as a police officer with the Village for more than twenty years. In 2010, Lavalais filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging race discrimination. He filed a second charge in January 2011, alleging that he was disciplined for filing his first EEOC charge and discriminated against because of his race.

In early February 2011, Lavalais was promoted to sergeant and placed on the midnight shift. Over a year later, on April 2, 2012, he requested a change of assignment from the midnight shift, expressing an interest in any supervisory assignment other than the midnight shift. Chief Pitassi denied his request. In July 2012, Lavalais filed a charge of discrimination with the EEOC, alleging that the Village "(and its Police Department leaders)" treated similarly situated officers not in the protected class more favorably "as to policies and re-assignment" and that he had "been placed on the midnight tour indefinitely" because of his race. A month later, the EEOC issued a right-to-sue letter.

Lavalais sued the Village and Chief Pitassi in federal district court alleging employment discrimination based on his race and in retaliation for filing an EEOC charge. The defendants moved to dismiss under Rule 12(b)(6) for failure to state a claim, and Lavalais filed an amended complaint un-

der Title VII and § 1983, alleging race discrimination, retaliation, and violations of the Equal Protection Clause. Count I alleges that Lavalais was passed over for assignment to the day or evening tour, was denied the opportunity to work a tour of duty other than the midnight tour, and was subjected to what is in effect a demotion in violation of Title VII. Lavalais alleges that the defendants overlooked his qualifications and seniority because of his race and in retaliation for his complaints to the EEOC. Count II alleges that in 2010 Lavalais complained to the EEOC that the defendants were discriminating against him because of his race and that in retaliation for his protected speech, the defendants assigned him to midnight duty and constructively stripped him of his authority as a sergeant. Count III alleges a violation of the Equal Protection Clause under § 1983, specifically that Chief Pitassi singled Lavalais out for less favorable treatment because of his race, granting him limited authority as a sergeant, passing over him in favor of a less qualified person for another tour, diminishing his job responsibilities, and retaliating against him. Count IV alleges a municipal liability race discrimination claim against the Village. The defendants moved under Rule 12(b)(6) to dismiss all claims, and the district court granted their motion. Lavalais appealed.

**II. Discussion**

Lavalais contends that the district court erred in dismissing his complaint. We review *de novo* a Rule 12(b)(6) dismissal for failure to state a claim. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665 (7th Cir. 2013). A "complaint must contain allegations that 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). We accept all well-pleaded factual allegations as true and view

them in the light most favorable to the plaintiff. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013). A plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). This means that "the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Alam*, 709 F.3d at 666 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

To the extent Lavalais pursues Title VII claims based on his initial placement on the midnight shift, such claims are time-barred. As applicable here, an EEOC charge "shall be filed … within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). If a plaintiff fails to file a timely charge concerning a discrete act of discriminatory conduct, his claim is time-barred. *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007). Lavalais was placed on the midnight shift on February 5, 2011. He did not file his EEOC charge complaining about that placement until July 18, 2012—more than 300 days later. Thus, his initial placement on the midnight shift cannot be the basis of his Title VII claims.

As for the Title VII retaliation claim, the district court dismissed it on procedural grounds, finding it barred because it varied from the 2012 EEOC charge. Lavalais has not challenged this ground for dismissal and thus has waived any argument that the court erred. *See Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011).

Turning to the Title VII race discrimination claim, the defendants first argue that in amending his complaint, Lavalais dropped his denial of transfer claim and proceeded only on

the claim regarding his initial placement on the midnight shift. A complaint must allege "'some specific facts' to support the legal claims asserted." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted). "The degree of specificity required … rises with the complexity of the claim." *Id.* at 616–17; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case … will require more detail … ."). "[A] complaint alleging [race] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his race]." *Luevano*, 722 F.3d at 1028 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)).

The original complaint specifically alleged that Lavalais requested Chief Pitassi to allow him to work a shift other than the midnight shift and that Pitassi denied his request. Compl. ¶ 18. These allegations are omitted from the amended complaint. However, the amended complaint does allege that Lavalais was being forced "to work midnights indefinitely," which "causes him to be virtually powerless," First Am. Compl. ¶ 21; that assignment to the midnight shift comes with significantly diminished job responsibilities, *id.* ¶ 19(c), and "severely restricted" duties—"it is as if he is not a sergeant," *id.* ¶ 22; that the defendants have compromised his "right [as a sergeant] to make major sergeant level and law enforcement decisions in his role as a sergeant" and that "this conduct … is continuing," *id.* ¶ 30 (alteration in original). These allegations sufficiently suggest a denial of transfer claim. And such a claim is not inconsistent with any other allegations of the amended complaint. "A party who appeals from a Rule 12(b)(6) dismissal may elaborate on her allegations so long as the elaborations are consistent with the

pleading." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012).

Furthermore, in responding to the motion to dismiss the amended complaint, Lavalais clearly maintained a denial of transfer claim. For example, in arguing that his claims were not untimely, he asserted that "[t]he date of his promotion to sergeant is not significant. What is significant is that … [his] written request to Chief Pitassi, for a transfer, was denied." Pl.'s Resp. Opp'n Defs' Mot. Dismiss 1-2. Although Lavalais's appellate brief seems to emphasize his initial assignment to the midnight shift, he advances arguments about being "disallow[ed] a transfer from the midnight tour," Appellant's Br. 14, which are sufficient to maintain the denial of transfer claim.

The defendants also argue that the district court erred in finding that the denial of transfer claim was within the scope of the 2012 EEOC charge. Generally, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). However, "a plaintiff can still bring [claims not included in the EEOC charge] if they are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'" *Moore v. Vital Prods., Inc.* 641 F.3d 253, 256–57 (7th Cir. 2011) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). "To be 'like or reasonably related,' the relevant claim and the EEOC charge 'must, at minimum, describe the same conduct and implicate the same individuals.'" *Id.* at 257 (quoting *Cheek,* 31 F.3d at 501).

The 2012 EEOC charge asserts that the Village and the leaders of the police department treated similarly situated

officers not in the protected class more favorably "as to policies and re-assignment" and that Lavalais had "been placed on the midnight tour indefinitely" because of his race. The amended complaint alleges that the Village and Chief have treated Lavalais less favorably than other officers because of his race and that he was denied the opportunity to work on a tour other than the midnight tour. The EEOC charge and amended complaint describe the same conduct and implicate the same individuals: Lavalais's indefinite assignment to the midnight tour, which in this case is another way of saying a denial of a transfer, by the Village and police department leaders, which surely includes the Chief of Police. And the alleged denial of a transfer could grow or reasonably be expected to grow out of the allegations in the EEOC charge. Thus, Lavalais can pursue his denial of transfer claim.

That brings us to the issue of whether the denial of transfer rises to a materially adverse employment action. "[A] *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). However, a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits**,** *significantly diminished material responsibilities*, or other indices that might be unique to a particular situation." *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 612–13 (7th Cir. 2001) (quotation and citation omitted) (emphasis added); s*ee also Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (explaining that a "materially adverse change might be indicat-

ed by a … demotion evidenced by … significantly dimin-
ished material responsibilities").

The amended complaint alleges that Lavalais's assign-
ment to the midnight shift for an indefinite period of time
stripped him of his authority as a sergeant, significantly di-
minished his job responsibilities, and caused him to be "vir-
tually powerless" as a sergeant. It also alleges that Lavalais
is "seldom permitted to perform sergeant duties," including
"instructing officers on what actions they should take [or]
not take," First Am. Compl. ¶ 19(c), and that his employer
"does not want a black person giving orders to lower rank-
ing officers," *id.* ¶ 21. And it is alleged that Lavalais's "duties
are so severely restricted, it is as if he is not a sergeant." Alt-
hough the complaint does not provide a lot of factual detail,
given the uncomplicated nature of Lavalais's race discrimi-
nation claim, the allegations are sufficient to plead that the
denial of a transfer from the midnight shift as well as La-
valais's treatment on that shift are materially adverse em-
ployment actions.

The complaint also alleges that the assignment to the
midnight shift was a demotion, which only adds confusion.
A "constructive demotion" is when an employer has made
conditions so unbearable that a reasonable person would
have felt compelled to accept a demotion rather than remain
in his current position. That is not Lavalais's claim. Instead,
he alleges that despite his promotion to sergeant, the denial
of a transfer to another shift prohibits him from realizing the
supervisory responsibilities and duties of that position.

Lavalais argues that he may assert a hostile work envi-
ronment claim even though he did not assert such a claim in
his complaint. He cites *Rabe v. United Air Lines, Inc.*, 636 F.3d

866, 872 (7th Cir. 2011), for the proposition that a complaint need not identify legal theories. While true, a complaint nonetheless must allege some facts that support whatever theory the plaintiff asserts. *E.g.*, *McCauley*, 671 F.3d at 616. Nothing in Lavalais's amended complaint or his EEOC charge fairly suggests a hostile work environment, so such a claim fails. *See Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1035–36 (7th Cir. 2004) (affirming dismissal of hostile work environment claim where EEOC complaints failed to allege anything that could reasonably be considered a hostile environment).

Turning to the § 1983 claims, the district court erred in concluding that a plaintiff need not allege a materially adverse employment action to state a claim under § 1983. The court relied on *Power v. Summers*, 226 F.3d 815 (7th Cir. 2000), but the § 1983 claim in that case alleged retaliation in violation of the First Amendment, a claim for which an adverse employment action is not required. Here, the § 1983 claim is based on race discrimination in violation of the Equal Protection Clause, a claim for which a materially adverse employment action *is* required. *See Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011) (Title VII and § 1983 race discrimination employment claims are analyzed under the same standards). Lavalais has alleged a sufficiently materially adverse employment action, so his § 1983 race discrimination claim (like his Title VII claim) survives the motion to dismiss.

The district court also erred in analyzing the equal protection claim under the class-of-one doctrine and dismissing it under *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 607–08 (2008), which held that "the class-of-one theory

of equal protection has no application in the public employment context." The equal protection claim is not a class-of-one discrimination claim, but a race discrimination claim. Finally, we affirm the dismissal of the municipal liability claim because Lavalais has failed to challenge the dismissal of that claim on appeal and thus has waived that claim. *See Logan*, 644 F.3d at 583.

### III. Conclusion

The district court's judgment is AFFIRMED in part and VACATED in part, and the case is remanded for further proceedings consistent with this opinion.