**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 13-50718

ALLEN THOMPSON,

United States Court of Appeals
Fifth Circuit

**FILED**

September 3, 2014

Lyle W. Cayce
Clerk

Plaintiff – Appellant,

v.

CITY OF WACO, TEXAS,

Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, CLEMENT, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Allen Thompson sued the City of Waco for racial discrimination under 42 U.S.C. § 1981 and Title VII. The district court dismissed Thompson's claims pursuant to Rule 12(b)(6), holding that Thompson failed to allege an adverse employment action. Because Thompson plausibly alleges that he was subject to the equivalent of a demotion, we reverse the district court's judgment.

I.

Thompson is an African American detective in the Waco Police Department. The Department suspended Thompson and two white detectives based on allegations that they had falsified time sheets. After reinstating the three detectives, the Department imposed written restrictions on Thompson

that it did not impose on the two white detectives.  The restrictions state that Thompson cannot (1) search for evidence without supervision; (2) log evidence; (3) work in an undercover capacity; (4) be an affiant in a criminal case; (5) be the evidence officer at a crime scene; and (6) be a lead investigator on an investigation.  According to Thompson, these restrictions have stripped him of the "integral and material responsibilities of a detective," and constitute a demotion.  Thompson alleges that he "no longer functions as a full-fledged detective; he is, effectively, an assistant to other detectives."  He further alleges that his new position has "significantly different and diminished material responsibilities," is less prestigious, will hinder his opportunities for advancement, and is less interesting.  He no longer uses the skills, education, and experience that he had acquired and regularly used as a detective.

## II.

We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*.  *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc).  We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff.  *Id.*  We need not, however, accept the plaintiff's legal conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *Covington*, 675 F.3d at 854 (internal quotation marks and citation omitted).

No. 13-50718

III.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual *or otherwise to discriminate* against any individual with respect to his compensation, *terms, conditions, or privileges of employment*, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  To establish a discrimination claim under Title VII or § 1981, a plaintiff must prove that he or she was subject to an "adverse employment action"—a judicially-coined term referring to an employment decision that affects the terms and conditions of employment.  *See, e.g., Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281-82 (5th Cir. 2004); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (explaining that the language of Title VII's antidiscrimination provision "explicitly limit[s] the scope of that provision to actions that affect employment or alter the conditions of the workplace").

For Title VII and § 1981 discrimination claims, we have held that adverse employment actions consist of "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating.  *See McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram*, 361 F.3d at 282.  "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram*, 361 F.3d at 282 (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

Additionally, our court has held that a transfer or reassignment can be the equivalent of a demotion, and thus constitute an adverse employment action.  *See Alvarado*, 492 F.3d at 612-15.  "[T]o be the equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less

prestigious or less interesting or providing less room for advancement." *Id.* at 613 (quoting *Sharp v. City of Hous.*, 164 F.3d 923, 933 (5th Cir. 1999)); *Pegram*, 361 F.3d at 283 ("[A]n employment transfer may qualify as an adverse employment action if the change makes the job objectively worse." (internal quotation marks omitted)); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 770 (5th Cir. 2001) ("A job transfer that includes a shift change that involves changes in duties or compensation or can be objectively characterized as a demotion may be an 'adverse employment action' . . . ."); *see, e.g.*, *Sharp*, 164 F.3d 933 ("The jury could have viewed transferring from the elite Mounted Patrol to a teaching post at the Police Academy to be, objectively, a demotion."); *Forsyth v. City of Dall.*, 91 F.3d 769, 774 (5th Cir. 1996) (recognizing as demotions the reassignment of two police officers from the Intelligence Unit to night patrol because the Intelligence Unit positions "were more prestigious, had better working hours, and were more interesting than night patrol" and "few officers voluntarily transferred from the Intelligence Unit to night patrol and other officers had been so transferred as punishment"); *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992).[1]

In this case, the district court held that Thompson failed to allege an adverse employment action because he pleaded only "the loss of some job responsibilities," without any change in "title, pay, and benefits." On appeal, Thompson contends that he alleged more than the mere loss of some job responsibilities; he contends that he alleged that the Department stripped him of the "integral and material responsibilities of a detective." According to

---

[1] As our court clarified in *Alvarado*, "[a]lthough *Click*, *Forsyth*, [and] *Sharp* . . . all involved claims of First Amendment retaliation under 42 U.S.C. § 1983, rather than claims of discrimination under Title VII, they are nevertheless relevant because the definition of 'adverse employment action' under § 1983, like Title VII's definition of 'adverse employment action,' includes demotions." *Alvarado*, 492 F.3d at 613 n.6.

Thompson, he no longer functions as a detective; he has been effectively demoted to the position of an assistant detective.

This court has recognized that the mere "loss of some job responsibilities" does not constitute an adverse employment action. *See Williams v. U.S. Dept. of Navy*, 149 F. App'x 264, 269-70 (5th Cir. 2005); *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (citing *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 521 (5th Cir. 2001) for the proposition that the "loss of some job duties" is not an ultimate employment decision); *Watts v. Kroger Co.*, 170 F.3d 505, 511-12 (5th Cir. 1999) (holding that a change in work schedule and request that an employee perform two additional tasks did not rise to the level of an adverse employment action). Other circuits similarly agree that "a mere inconvenience or an alteration of job responsibilities" will not suffice. *See Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993); *see also Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1204 n.11 (11th Cir. 2013) (noting that "it's a rare case where a change in employment responsibilities qualifies as an adverse employment action"); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (agreeing with "other circuits [which] have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes").

This does not mean that a change in or loss of job responsibilities can never form the basis of an actionable discrimination claim, however. In certain instances, a change in or loss of job responsibilities—similar to the transfer and reassignment contexts—may be so significant and material that it rises to the level of an adverse employment action. *See Schirle v. Sokudo USA, LLC*, 484 F. App'x 893, 898 (5th Cir. 2012) ("Still, it is recognized that a significant diminishment of 'material responsibilities,' or a demotion, also constitutes an

adverse employment action under Title VII." (internal citations omitted)); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1245 (11th Cir. 2001) ("We do not suggest that a change in work assignments can never by itself give rise to a Title VII claim; in unusual instances the change may be so substantial and material that it does indeed alter the 'terms, conditions, or privileges' of employment."); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (explaining that a "materially adverse change might be indicated by . . . a demotion evidenced by . . . significantly diminished material responsibilities"); *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) ("'[W]ithdrawing an employee's supervisory duties,' for example, 'constitutes an adverse employment action.'"); *Dahm v. Flynn*, 60 F.3d 253, 257 n.2 (7th Cir. 1994) ("[I]f the duties of an assistant prosecutor were changed from trying cases to sharpening pencils, that change would be materially adverse . . . .").[2]

In this case, Thompson alleges more than a mere loss of some job responsibilities. He alleges facts that, taken as true, plausibly suggest that, following his reinstatement, the Department rewrote and restricted his job description to such an extent that he no longer occupies the position of a detective; he now functions as an assistant to other detectives. Although a

---

[2] *Compare Baloch v. Kempthorne*, 550 F.3d 1191, 1197 (D.C. Cir. 2008) (holding that a change in job duties was not an adverse employment action where the new job duties "did not constitute qualitatively inferior work requiring any less skill or knowledge"), *and Morales-Vallellanes v. Potter*, 605 F.3d 27, 38 n.15 (1st Cir. 2010) ("We emphasize that there was no evidence presented at trial that the rotation was permanent, or that he was divested of *meaningful job responsibilities* as a consequence." (emphasis added)), *and Hunt*, 277 F.3d at 771 (hold that a shift change was not an adverse employment action where it was "undisputed that the night shift would have offered Hunt the same benefits, responsibilities, and compensation" and there was no evidence that the night shift "could be characterized, objectively, as a demotion"), *with Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (holding that plaintiff successfully pleaded an adverse employment action based on his assignment to the night shift where plaintiff alleged facts indicating that his duties were so restricted that "it is as if he is not a sergeant").

detective in name, Thompson alleges that he can no longer "detect"—that is, search for evidence—without supervision.  Nor can he log evidence, be the affiant in a criminal case, work undercover, be the evidence officer at a crime scene, or be the lead investigator on an investigation.  Thompson therefore alleges that he lost the essential job functions of a detective, he no longer uses his education and skills that he had acquired and regularly used as a detective, and his new position is less interesting, provides fewer opportunities for advancement, is less prestigious, and involves significantly diminished responsibilities.  We previously have held that an employment decision "need not result in a decrease in pay, title, or grade" to constitute a demotion; "it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Alvarado*, 492 F.3d at 613 (quoting *Sharp*, 164 F.3d at 933).  Viewing the factual allegations in the light most favorable to Thompson, we conclude that Thompson plausibly alleges that he was subject to the equivalent of a demotion.

The City distinguishes the *Alvarado* line of cases on the ground that those cases involve transfers or reassignments of employees to different units or positions.  Under the City's reasoning, an employer's decision formally to transfer an employee to a new position or division could be actionable; whereas an employer's decision to rewrite an employee's job description or strip the employee of his or her material job functions could not.  The City's proposed distinction is not supported by the statute's terms, which reach discrimination in the "terms, conditions, or privileges" of employment. *See* 42 U.S.C. § 2000e-2(a)(1).  Moreover, the City's proposed distinction is formalistic, easily manipulated, and has not been adopted by courts.  In both scenarios, the employee may effectively occupy a new and objectively worse position, with

significantly diminished material responsibilities. *See, e.g.*, *Schirle*, 484 F. App'x at 898; *Lavalais*, 734 F.3d at 633.

The cases cited by the district court and the City involving the mere loss of some job responsibilities are distinguishable from the present case. For instance, in *Williams*, 149 F. App'x at 269-70, this court held at the summary-judgment stage that a nurse employed at a naval clinic was not subject to an adverse employment action when the clinic removed Williams's duties as a diabetic educator, which had comprised approximately 20% of her overall job duties. In that case, however, there was no indication that being a diabetic educator was an integral and material part of Williams's job as a nurse or that Williams's overall level of responsibility was significantly diminished. *See id.* Here, in contrast, Thompson plausibly alleges that working undercover, searching for and logging evidence, serving as an evidence officer, acting as an affiant, and being a lead investigator "are all integral and material responsibilities of a detective," and that his job responsibilities have been significantly diminished.

The district court also cites *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 879 (5th Cir. 2010). In *Roberts*, we held that an employer's transfer of some of Roberts's job duties to another employee did not constitute an adverse employment action for the purposes of a retaliation claim "in light of the fact that Roberts acknowledge[d] that she was overworked prior to the transfer." *Id.* Thus, an employer's decision to relieve an employee from a burdensome workload was not materially adverse in *Roberts*. There is no similar allegation in this case that Thompson was overworked or that his job duties were otherwise burdensome.

*Mota*, 261 F.3d at 521, is similarly distinguishable. In *Mota*, the plaintiff presented evidence that, during his employment as a visiting professor, the

university "stripped [him] of his duties as principal investigator on certain projects." Significantly, the university limited Mota's ability to serve as principal investigator only "on certain projects," and there was no indication that being a principal investigator on those projects was a significant part of his job as a visiting professor. *Id.* In contrast, Thompson alleges that he lost his ability to perform his essential job functions in all investigations, not just on certain projects. *Compare id.*, *with Schirle*, 484 F. App'x at 898, *and Lavalais*, 734 F.3d at 633 (holding that the plaintiff successfully pleaded an adverse employment action where the plaintiff alleged facts indicating that his duties were so restricted on the midnight shift that "it is as if he is not a sergeant").

For the above reasons, Thompson states a plausible claim that he was subject to the equivalent of a demotion. We of course express no view on Thompson's likelihood of success, noting only that further assessment of his demotion claim is fact-intensive and better suited for the summary-judgment or trial stage. *See, e.g.*, *Alvarado*, 492 F.3d at 613; *Williams*, 149 F. App'x at 269-70.

## IV.

Because Thompson plausibly alleges an adverse employment action, we REVERSE the district court's judgment and REMAND for further proceedings.

No. 13-50718

JERRY E. SMITH, Circuit Judge, dissenting:


Plaintiff Allen Thompson failed to plead facts sufficient to meet our circuit's requirement of an "ultimate" employment action. I therefore respectfully dissent.


I.

Under 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." If there is no direct evidence of discriminatory intent, a plaintiff may establish his disparate-treatment claim indirectly.[1] That is done through the *McDonnell Douglas* burden-shifting framework under which a *prima facie* case of discrimination is established by showing that the plaintiff (i) belongs to a protected class; (ii) is qualified for the position at issue; (iii) was subject to an adverse employment action; and (iv) was treated less favorably than other similarly situated employees outside of his class.[2] Because the *McDonnell Douglas* framework is merely an evidentiary standard, however, courts may require neither that the *McDonnell Douglas prima facie* case be adequately pleaded[3] nor that jury

---

[1] *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973); *see also Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

[2] *See McDonnell Douglas*, 411 U.S. at 802; *Haire v. Board of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

[3] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("[I]t is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving

instructions be framed in their terms.[4]

Thompson posits that the district court erred in dismissing his claim for failure to plead an adverse employment action, reasoning that it is an element of the *McDonnell Douglas prima facie* case and therefore need not be pleaded. That theory, however, is based on a misunderstanding of the role of adverse employment actions in disparate-impact claims. The district court did not err in considering whether an adverse employment action was properly pleaded, because it is not merely an element of a *prima facie* case using the indirect method of *McDonnell Douglas* burden-shifting; to the contrary, it is an essential element of the underlying claim of disparate treatment under Title VII.

Although the Supreme Court in *Swierkiewicz* held that a plaintiff need not plead the *prima facie* elements of the *McDonnell Douglas* framework in order to withstand a Rule 12(b)(6) motion to dismiss, it did so "on the ground that the Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement by insisting that Swierkiewicz allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."[5] In other words, given that the plaintiff could prove discriminatory intent using direct evidence, requiring him to plead facts sufficient to show all elements of a *prima facie* case under the indirect method would

---

all the elements of a prima facie case."); *see also Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("Although Raj does not challenge the district court's interpretation of his pleading burden, we nonetheless note that a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6)motion to dismiss for failure to state a claim. Inasmuch as the district court required Raj to make a showing of each prong of the prima facie test for disparate treatment at the pleading stage, the district court erred by improperly substituting an "evidentiary standard for a pleading requirement." (citations omitted)).

[4] *See Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004) ("This Court has consistently held that district courts should not frame jury instructions based upon the intricacies of *McDonnell Douglas* burden shifting analysis.").

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quoting *Swierkiewicz*, 534 U.S. at 508).

require him "to plead more facts than he may ultimately need to prove to succeed on the merits." *Swierkiewicz*, 534 U.S. at 511–12. Although that heightened standard was erroneous, the plaintiff was still required to meet the general standard: to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 544. Therefore, it was enough in *Swierkiewicz* for the plaintiff to allege that he was terminated in violation of Title VII on the account of his national origin, providing relevant details of events leading up to his termination, relevant dates, and the nationalities of at least some of the relevant individuals. *See Swierkiewicz*, 534 U.S. at 514.

Here, the district court dismissed for failure to plead sufficient facts to show an "adverse employment action," which is a judicially-coined term utilized as shorthand for the statutory phrase "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). As a statutory element of a disparate-treatment claim, an adverse employment action is part of the "ultimate question" in Title VII disparate-treatment claims: "whether a defendant took the *adverse employment action* against a plaintiff because of [his] protected status."[6] Therefore, the two essential elements of a disparate-treatment claim are (1) an adverse employment action that (2) occurs as the result of discrimination based on one's protected status.[7] Regardless of whether the plaintiff proceeds to provide direct or indirect evidence of discrimination, those two elements must be established to maintain a disparate-treatment claim; juries are instructed accordingly,[8] and plaintiffs must plead

---

[6] *Kanida*, 363 F.3d at 576 (emphasis added); *see also Raj*, 714 F.3d at 331. In *Swierkiewicz*, the complaint was adequate because it pleaded both an adverse employment action ("termination") and discriminatory intent ("based on national origin"). *Swierkiewicz*, 534 U.S. at 514.

[7] *See* 42 U.S.C. § 2000e-2(a)(1); *see also Kanida*, 363 F.3d at 576.

[8] *See Kanida*, 363 F.3d at 576; *see also* Fifth Circuit Labor and Employment Law

No. 13-50718

accordingly.[9]  Therefore, although an adverse employment action happens to be a part of the *prima facie* case under *McDonnell Douglas*, the district court—because "adverse employment action" is also an essential element of a disparate-treatment claim—did not err in considering whether it was properly pleaded.

## II.

Contrary to the majority's holding, Thompson failed to plead sufficient facts to show an adverse employment action under Fifth Circuit precedent.  As noted by the majority, we recognize only "ultimate" employment decisions as actionable adverse employment actions for Title VII discrimination claims.[10] Ultimate employment decisions include only hiring, firing, promoting, failing to promote, demoting, granting leave, and compensating.[11]  Employment actions such as a purely lateral transfer,[12] reprimands,[13] those that only limit a potential an employee's opportunity for promotion or lateral transfer,[14] and those that "do[] not affect job duties, compensation, or benefits"[15] are not

---

PATTERN JURY CHARGES 13–17 (2009).

[9] *See, e.g., Raj*, 714 F.3d at 331 ("Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest LSU's actions were based on Raj's race or national origin or that LSU treated similarly situated employees of other races or national origin more favorably.  Because Raj has failed to raise his right to relief above the speculative level, we affirm the dismissal of Raj's complaint under Rule 12(b)(6) for failure to state a claim." (citation and internal quotation marks omitted)).

[10] *See McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) (per curiam); *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

[11] *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram*, 361 F.3d at 282; *Banks*, 320 F.3d at 575; *Sharp v. City of Hous.*, 164 F.3d 923, 933 n.21 (5th Cir. 1999).

[12] *See Burger v. Cent. Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999).

[13] *See Sharp*, 164 F.3d at 933 n.21.

[14] *See Banks*, 320 F.3d at 575–76.

[15] *Pegram*, 361 F.3d at 282.

13

actionable adverse employment actions.

Importantly here, the loss of some job responsibilities is insufficient under this standard.[16] Also key for the disposition of this case, the law of this circuit imposes a "strict" standard,[17] one that has been recognized as the most stringent among our sister courts, with only the Eleventh Circuit having a comparable one.[18]

The majority errs in holding that Thompson's alleged loss of job responsibilities meets this exacting standard. By importing the lower "materially adverse" employment-actions standard of our sister circuits, the majority *sub silentio* overrules our requirement of an ultimate employment action. Essentially, under the majority's notion, even the restriction of job duties may now be deemed a sufficient employment action where the plaintiff merely alleges that the restrictions are "material." Although that approach might be appropriate under the law as it has been interpreted by other courts of appeals, it is not the law here, at least not until today.

Although Thompson pleaded that his loss of job responsibilities amounted to an effective demotion, such a conclusional assertion deserves no weight. Instead, we must consider whether the job restrictions as pleaded constitute an ultimate employment action required to state a disparate-treatment claim. Under our standard, the loss of some job responsibilities, without more, is not an ultimate employment action. The distinction may seem formulistic,

---

[16] *See Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 521 (5th Cir. 2001); *see also Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 269–70 (5th Cir. 2005) (per curiam).

[17] *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).

[18] *See, e.g.*, Autumn George, Note, *"Adverse Employment Action"—How Much Harm Must Be Shown To Sustain a Claim of Discrimination Under Title VII?*, 60 MERCER L. REV. 1075, 1083–87 (2009); *see also* Michael Rusie, Note, *The Meaning of Adverse Employment Actions in the Context of Title VII Retaliation Claims*, 9 WASH. U. J.L. & POL'Y 379, 385–89 (2002).

but its purpose is significant:  We do not want to get involved in every dispute between employer and employee.  In the end, if the restriction of job responsibilities is egregious enough, the employee can seek redress with a constructive-discharge claim.  *See McCoy*, 492 F.3d at 557–58.

The majority bases its contrary holding on cases from other circuits, our unpublished decision in *Schirle v. Sokudo USA, LLC*, 484 F. App'x 893 (5th Cir. 2012), and our opinion regarding lateral transfers in *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007).  I will address each basis for the majority's theory in turn.

A.

The majority cites decisions of the Sixth, Seventh, and District of Columbia Circuits in support of its conclusion, but none of those utilizes the "ultimate employment action" standard that the law properly requires.  Instead, they apply the lower "materially adverse employment action" standard.[19]  Instances, under a less exacting standard, in which the restriction on job duties—viewed by itself—was deemed an adverse employment action lends no persuasive support for the proposition that such restrictions should meet our more demanding standard.  Therefore, the decisions of the other courts of appeals are interesting but irrelevant.

B.

In holding that the loss of some job responsibilities may be enough if they affect material responsibilities, the majority also relies on *Schirle*, which is

---

[19] *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007); *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007); *Dahm v. Flynn*, 60 F.3d 253, 257 n.2 (7th Cir. 1994).

neither binding precedent (being unpublished), good law, nor persuasive. There the panel, although ostensibly applying our ultimate-employment-action standard, in fact imported the materially-adverse-employment-action standard of *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993),[20] as referenced in a parenthetical in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

That might be persuasive if, after *Burlington Industries*, this circuit had adopted the less exacting standard used in the Seventh Circuit, but the opposite is true: Even after the Supreme Court's reference to the Seventh Circuit, we reaffirmed our application of the much stricter ultimate employment action standard in *McCoy*.[21] Because *Schirle* improperly applied the wrong test, it is irrelevant here.

## C.

The majority relies heavily on *Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007), and the three § 1983 retaliation cases cited therein,[22] in theorizing that employment actions that solely affect job duties can constitute the equivalent of a demotion and, therefore, an ultimate employment decision. In *Alvarado*, however, the plaintiff claimed that a denial of a transfer to a new position could be considered an ultimate employment action—contrary to the

---

[20] "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady*, 993 F.2d at 136.

[21] *McCoy*, 492 F.3d at 560 ("Even though our precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII *discrimination* claims and therefore continues to justify summary judgment dismissal of McCoy's discrimination claims, her retaliation claims require a closer look post-*Burlington Northern*.").

[22] *See Sharp v. City of Hous.*, 164 F.3d 923 (5th Cir. 1999); *Forsyth v. City of Dall.*, 91 F.3d 769 (5th Cir. 1996); *Click v. Copeland*, 970 F.3d 106 (5th Cir. 1992).

general rule that lateral transfers are not ultimate employment actions—if the transfer would have most accurately been considered a promotion. *See Alvarado*, 492 F.3d at 611–12. In support of that proposition, the court cited *Sharp*, *Forsyth*, and *Click*, three retaliation cases in which, after considering a number of factors, including the change or loss of job duties, this court had held that a transfer can be the equivalent to a demotion. *Alvarado, id.* at 612–13.

Unlike the present case, each of the four cases at issue involved a transfer from one position to another. No decision of this court has expanded the application of *Alvarado* to situations that do not involve transfers. That is important, because such transfers involve more than the *restriction* of job responsibilities and could, therefore, be considered demotions.

For example, in *Click*, deputy sheriffs were transferred from the law-enforcement division to a new position as jail guards. *See Click*, 970 F.2d at 109. Yes, they were still deputy sheriffs, but they now held a different position with different job responsibilities. In *Sharp*, a police officer was transferred from the horse-mounted division to a teaching post. Yes, the employee was still a police officer, but she was in a new position. *See Sharp*, 164 F.3d at 923, 933. In *Forsyth*, two police officers were transferred from the intelligence unit to new positions as night uniformed patrolmen. Yes, they were still police officers, but they now held a new position. *See Forsyth*, 91 F.3d at 774. Finally, in *Alvarado*, a female police officer was denied a transfer to the Texas Rangers. Yes, she was still a police officer, but she was denied a transfer to a new position. *See Alvarado*, 492 F.3d at 609–11.

One could imagine that Thompson could have been transferred to the homicide division, for example. He would have retained his rank as detective but would be working a "new position." Instead, he has not been denied or

forced into *any* transfer. He does not hold a new position but remains a detective in the drug division. His claim is not of a transfer to a new position that is the equivalent of a demotion; instead, the job duties as a detective in his old position have been restricted.

In essence, Thompson and the majority urge an expansion of *Alvarado* from (a) a consideration of when transfers can be considered either demotions or promotions to (b) a determination of when *any employment action* may be properly considered a demotion. In doing so, however, this court would be superseding our precedents holding that employment actions that affect job duties alone—without change in title, compensation, benefits, or position—do not constitute ultimate employment actions.

*Alvarado* involves a lateral transfer between positions and not, as here, a restriction of job responsibilities. *Id.* at 613−14. There is no indication in the pleadings that lead investigator or evidence officer is a separate position that has been foreclosed. Instead, these restrictions are represented in the pleadings as merely a loss in job responsibilities with no corresponding change in benefits, compensation, or position. Although it might be accurate to suggest that these restrictions in some way restrict Thompson's potential future opportunities, this is not enough to constitute an adverse employment action under Fifth Circuit law.[23]

This case is more properly controlled by our precedents regarding the mere loss of job responsibilities,[24] which would require us to hold that these

---

[23] *See Banks*, 320 F.3d at 575–76; *Burger*, 168 F.3d at 878–80.

[24] *See, e.g.*, *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003); *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 521 (5th Cir. 2001); *Watts v. Kroger Co.*, 170 F.3d 505, 511–12 (5th Cir. 1999).

No. 13-50718

restrictions are not adverse employment actions, so I would affirm the judgment of dismissal.  Because the majority, though conscientiously, has decided otherwise, I respectfully dissent.